UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIKA RODWELL, as the personal
representative of the Estate of ERYCK
FOSSETT, deceased,

      Plaintiff,

v.

SHUNYA CLEVELAND, MARIANNE UDOW,
LAURA CHAMPAGNE, JEROME RUTLAND,
GEORGIA CAMBELL, DEBRA ANDERSON,
ELRETA DODDS, TED FORREST, and
MARGARET WARNER, individually as joint
participants in their personal capacities,

      Defendants.
_____/

Case No. 08-11437

Hon. Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [56]**

This matter comes before the Court on Defendants Marianne Udow, Laura Champagne, Georgia Campbell, Elreta Dodds, Ted Forrest and Margaret Warner's motion for summary judgment,[1] pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is GRANTED.

> In so ruling, the Court does not mean to condone or excuse the alleged misfeasance of the defendants. The allegations of the complaint describe a tragedy that could have been avoided. As explained, however, the allegations do not present claims of a constitutional dimension remediable under 42 U.S.C. § 1983.

---

[1] The Michigan Attorney General has only filed an appearance on the moving Defendants. It has not filed an appearance on behalf of Cleveland, Anderson or Rutland; nor has any other attorney. The analysis in this Opinion, however, is applicable to all Defendants.

*Coker ex rel. Coker v. Henry*, 813 F.Supp. 567, 573 (E.D. Mich. 1993), *aff'd*, 25 F.3d 1047 (6th Cir. 1994)

**I.    Facts**

"This case presents a civil rights action under 42 U.S.C. § 1983, "[t]he facts of [which] ... are undeniably tragic." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 191 (1989).

Plaintiff Erika Rodwell, as Personal Representative of the Estate of Eryck Fossett, deceased, originally filed suit against Defendants Shunya Cleveland, Forrest, Warner, and Wayne County Child Protective Services on March 3, 2008 in the Wayne County Circuit Court. (Notice of Removal ¶ 1.) Defendants removed the case to this Court on April 3, 2008 on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiff's federal claims, and supplemental jurisdiction over Plaintiff's state-law claims, pursuant to 28 U.S.C. § 1367, because they are so related to the federal claims set forth in the Complaint that they form part of the same case or controversy. (Notice of Removal ¶¶ 2-3.) On May 14, 2008, the Court, *sua sponte*, remanded Plaintiff's state law claims. [Docket Text # 9.]

On June 17, 2009, Plaintiff filed an Amended Complaint dismissing Defendant Wayne County Child Protective Services and adding Defendants Jerome Rutland, Campbell, Debra Anderson, Udow, Champagne, and Dodds, in their individual capacity. [Docket Text # 37.] In the Amended Complaint, Plaintiff seeks to recover damages pursuant to 42 U.S.C. § 1983 for the alleged violation of Fossett's civil rights.

On January 10, 2006, Fossett was beaten to death by his mother's (Plaintiff Rodwell) boyfriend (Carlee Hines), while she was at work. (Am. Compl. ¶ 14.) Plaintiff alleges that

"Michigan Child Protective Services in Wayne County," who has not been named as a defendant in this matter, was made aware of "beating ... as early as November 10, 2005." (*Id.* ¶ 15.)

Specifically, Plaintiff alleges that, on November 9, 2005, when she picked Fossett up from Hines' home—as he had been watching the child while she was at work—she "found him severely battered and bruised on his head and face." (*Id.* at ¶ 32.) Hines' sisters informed Plaintiff that Fossett "had fallen off a bed onto his face. Being severely alarmed by the injuries ..., she took her son ... to Oakwood Hospital." (*Id.* at ¶ 33.) Plaintiff, however, testified that she did not take Fossett to the hospital until the following morning. (Rodwell Dep., Defs.' Mot., Ex. 1 at 61-62.) According to the Amended Complaint, "[t]he physicians [at Oakwood Hospital] ... *were also alarmed*[2] by the injuries they found and (secretly, without notice to the child's mother) reported the matter to Wayne County Protective Services by phone and in writing ... on [November 10, 2005]." (Am. Compl. ¶ 35 (emphasis added).)

The same day that the referral was made by the hospital to Wayne County Child Protective Services (CPS), it was assigned to Defendant Cleveland for investigation. (*Id.* at ¶ 44.) Plaintiff, however, alleges that "Cleveland did not 'begin' her investigation until [January 10, 2006]—the very day that ... Fossett's death was reported to CPS." (*Id.* at ¶ 45.) But, Plaintiff and her mother (Martha Rodwell) testified that—shortly after the November 10, 2005 referral—two CPS workers came to the mother's home, where Plaintiff

---

[2] The Amended Complaint implies, and as Plaintiff testified at her deposition, she did not suspect any abuse and she continued to leave Fossett in Hines' care following the November 9, 2005 incident. (Rodwell Dep., Defs.' Mot., Ex. 1 at 63-66.)

3

resided with Fossett. (Martha Rodwell Dep., Defs.' Mot., Ex. 2 at 39-43; Rodwell Dep., Defs.' Mot., Ex. 1 at 71-72, 74.) Plaintiff was not home and the CPS workers left their business cards with her mother and requested that Plaintiff make contact with them. According to Plaintiff, she placed a number of phone calls to CPS in November 2005 attempting to inquire about their home visit: specifically to Cleveland and Cleveland's supervisor, Ms. Williams. Plaintiff also testified that Cleveland attempted return her call and left her a voice message. (Rodwell Dep., Defs.' Mot., Ex. 1 at 70-78.)

In the Amended Complaint, Plaintiff alleges that Defendants violated Fossett's civil right and seek damages pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendant Cleveland is individually liable because she failed to investigate an allegation that Fossett was being abused. Cleveland, however, has not joined in the pending motion. Plaintiff also claims that the other named Defendants are individually liable for Fossett's death because they had an official policy or custom of acquiescing in CPS workers' (like Cleveland) noncompliance with the statutory requirements of the Michigan Child Protection Law, Mich. Comp. Laws § 722.621 *et seq.*

> 53. The Wayne County MCHS/CPS supervisors (JEROME RUTLAND, GEORGIA CAMBPELL, MARGARET WARNER, DEBRA ANDERSON, AND ELRETA DODDS) were well aware of the MCHS/CPS Wayne County CPS workers long term willful and deliberate refusal to comply with the mandatory investigative requirements of the Child Protection Act, and their long term manifest refusal to do their job (as set forth above) and (in bad faith) did nothing to correct the situation until after the Plaintiff's death, and the filing of the federal lawsuit, *Dwayne B., et al v Granholm, et al.*, on August 9, 2006.
>
> 54. The State of Michigan MDHS/CPS administrative staff, including MARIANNE UDOW, LAURA CHAMPAGNE, and TED FORREST, were also well aware of this Wayne County MCHS/CPS custom, policy and practice, BEFORE August 9, 2006 and did nothing substantive to end it.

(Am. Compl. ¶¶ 53-54.)

4

In the Amended Complaint, Plaintiff alleges due process violations brought pursuant to the Fourteenth Amendment against all Defendants based upon their failure to protect Fossett from the abuse inflicted upon him by Plaintiff's boyfriend, Hines.

> Fossett's ... death[] would have been avoided if Defendants had simply done what they were obligated to do by law to protect the Plaintiff from further abuse and neglect, and to otherwise ensure his health, safety and welfare.

(Am. Compl. ¶ 56.)

This matter is before the Court on Defendants' motion for summary judgment.

## II.   Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must

5

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  Analysis[3]

Section 1983 establishes a federal cause of action against anyone who acts under the color of state law to deprive a person of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant was acting under color of state law and that the defendant's conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).

In any § 1983 action, the exact contours of the underlying right said to have been violated must first be identified. The Supreme Court has repeatedly held that where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular government behavior, "that Amendment, not the more generalized notion of [fourteenth amendment] 'substantive due process,' must be the guide for

---

[3] Plaintiff, in response to Defendants' motion, completely fails to apply the facts of this case to the applicable law. Instead, Plaintiff—relying on the *Dwayne B, et al. v. Granholm*, No. 06-13548 (E.D. Mich. Oct. 24, 2008) [Docket Text # 148], consent agreement—argues that there was a systemic problem of constitutional magnitude within Michigan's CPS program for which Defendants should be held personally liable. Plaintiff, however, fails to cite any authority for such a proposition. Plaintiff merely argues that "[t]he actual victims of the collapse of the State's CPS system, e.g., the abused and neglected children of the State of Michigan like Eryck Fossett, did not receive any financial compensation for the damages done to them as a proximate cause of the system's collapse and the concomitant violation of their federal rights." (Pl.'s Resp. at 7.)

analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). There is no explicit textual source of constitutional protection against the particular government behavior that Plaintiffs have alleged here so the deprivation is analyzed under the Fourteenth Amendment.

Plaintiffs have attempted to plead both a substantive due process claim and a procedural due process claim. The contours of Plaintiffs' claims, however, are vague at best. When viewing the complaint in the light most favorable to Plaintiffs, Plaintiffs have alleged that Defendants' custom, policy, or practice of acquiescing in noncompliance with the statutory requirements (e.g., failing to investigate reports of suspected abuse) constitutes deliberate indifference and violated Fossett's substantive due process rights, and that Defendants' failure to comply with the requirements of Michigan's Child Protection Law violated Fossett's procedural due process rights.

**A. Substantive Due Process**

Defendants claim that Plaintiff's § 1983 claim fails because there is no constitutionally protected right to receive protective services for those outside of the state's custody, and this Court agrees.[4] Here, there is no question that Defendants conduct did not violate Fossett's Fourteenth Amendment rights: a state's failure to protect a non-custodial individual from private violence, such as alleged here, does not constitute a federal substantive due process violation.

---

[4] As the Court is granting summary judgment on other grounds, it need not discuss the merit of Defendants' argument that because they "had no personal involvement in the events leading up to the death of the Plaintiff's son ... [and] they had no knowledge of the facts or circumstances leading up to [his] death, ... they cannot be held liable under § 1983." (Defs.' Mot. at 15.)

7

Plaintiff's § 1983 claim is premised on his assertion that Fossett had a constitutional right to receive protection from the State against Hines' abuse. This assertion is foreclosed by the Supreme Court's decision in *DeShaney*, 489 U.S. 189. In that case, a four-year old child was beaten and permanently injured by his father, with whom he lived. County social workers received complaints that the boy was being abused by his father, but nevertheless did not remove the boy from his father's custody.

The Supreme Court held that the County's actions did not violate the Due Process Clause of the Fourteenth Amendments. The Court reasoned:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney*, 489 U.S. at 195. As the *DeShaney* Court stated, the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.

The substantive due process claim here is similar to, but less egregious than, the due process claim alleged in *DeShaney*. As in *DeShaney*, this claim arose out of private violence—the alleged abuse of the child by Plaintiff's boyfriend. Also, as in *DeShaney*, neither the perpetrator nor the victim were in the state's custody or under its supervision at the time of this alleged conduct.

There are two exceptions to the *DeShaney* rule. *See Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005). The *DeShaney* Court described the first exception:

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. Plaintiff alleges no facts to demonstrate the applicability of the first exception. The second exception, referred to as the "state-created-danger" exception, arises "where a State creates a perilous situation that renders citizens more vulnerable to danger at the hands of private actors." *Schroder*, 412 F.3d at 727-28.

For the state-created danger exception to apply, the plaintiff must establish the following:

> (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence ...; (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large ...; and (3) the requisite state culpability to establish a substantive due process violation.

*Id.* (internal quotation marks and citations omitted).

In the present matter, no Defendant created or increased the risk of harm to Fossett. In fact, Plaintiff has repeatedly alleged that the Defendants "did nothing" to investigate the referral from the hospital. The Sixth Circuit has observed that a failure to act, as opposed to affirmative conduct, does not cause a "state-created-danger" to arise. *See Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). Moreover, it was Plaintiff—not Defendants—who voluntarily placed Fossett in the care of Hines after the November 9, 2006 incident, despite having found her son that day "severely battered and bruised" which "severely alarmed" her. Plaintiff testified that, after November 9, 2005, she continued to use Hines as a babysitter and did not suspect that he had abused or harmed Fossett, including the night that Fossett was killed. (Rodwell Dep., Defs.' Mot., Ex. 1 at 63-66, 87-100.)

Plaintiff has not alleged facts that fit within the state-created-danger exception to *DeShaney*.

Plaintiff, here, has simply failed to plead a cognizable substantive due process claim. The Court finds that Defendants had no constitutional duty to protect Fossett from the private harm caused by Plaintiff's boyfriend. Because there is no underlying unconstitutional conduct, there can be no direct, supervisory or municipal liability under § 1983. *McQueen v. Beecher Community Schools*, 433 F.3d 460, 470-71 (6th Cir. 2006).[5]

---

[5] The Court also rejects Plaintiff's argument that Defendants, as state actors, can be held liable under §1983 for a substantive due process claim for violating: (1) the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997 (AAA), 42 U.S.C. §§ 620-27, 670-670a; (2) section 5106a of the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5101 *et seq.*; or (3) applicable federal regulations (i.e., 42 C.F.R. §§ 1355.25(a), (e), (h) and 42 C.F.R. §§ 1357.15(t)-(u)).

Regarding the alleged violation of section 5106a of the CAPTA, the Sixth Circuit has held that section 5106a does not create rights enforceable in a § 1983 action. *See Tony "L", et al. v. Childers*, 71 F.3d 1182, 1189-90 (6th Cir. 1995) ("Plaintiffs have no enforceable rights under this provision of CAPTA. ... Our above analysis indicates we do not think that Congress intended to create a private right of action under the CAPTA provisions we have discussed. [Thus,] Plaintiffs have no claim for a violation of any rights under CAPTA.") (internal citation omitted).

As to the alleged violation of the AAA, Plaintiff has: (1) failed to specify what statutory provision of the AAA that Defendant allegedly violated; and (2) even if Plaintiff could demonstrate a private cause of action to sue under the AAA, Plaintiff only has a right to sue for prospective relief, not monetary damages. *See Lesher v. Lavrich*, 784 F.2d 193, 197-98 (6th Cir. 1986) ("It may be reasonable to read the Adoption Assistance Act to permit parents and children affected by the programs it funds to sue to force those programs to comply with the federal funding requirements; however, the instant action presents entirely different issues. Neither appellants' amended complaint, nor either of their briefs even remotely suggest that this action sought the prospective relief of requiring the State to revise its procedures and institute, in the future, 'preplacement preventive service plans' for all child protection cases. Rather, the complaint sought only retrospective relief, in the form of damages for the appellees' past conduct. ... We think it obvious that whatever rights the Adoption Assistance Act might confer on parents, relief ... awarding damages ... would not be available.").

The federal regulations Plaintiff claims that Defendants violated, 42 C.F.R. §§ 1355.25(a), (e), (h) and 42 C.F.R. §§ 1357.15(t)-(u), are non-existent. To the extent that Plaintiff is referring to 45 C.F.R., not 42 C.F.R., the Court rejects—for the reasons

## B. Procedural Due Process

Plaintiff also argues, in opposition to Defendants' motion, that Defendants can be held liable under §1983 based on a procedural due process claim for violating a mandatory provision of state law—Michigan's Child Protection Law.

> Ordinarily, a § 1983 claim must be predicated on the deprivation of a federal constitutional right. However, state law in the form of statutes, rules, regulations or policy statements, may give rise to a protected liberty interest that cannot be infringed absent observance of procedural due process.

*Coker*, 813 F.Supp at 569.

> State-created liberty interests arise when a state places substantive limitations on official discretion. A state substantively limits official discretion by establishing substantive predicates to govern official decisionmaking and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met. The state statutes or regulations in question also must use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present. Finally, the statute or regulation must require a particular substantive outcome. State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.

*Tony "L"*, 71 F.3d at 1185 (internal quotations and citations omitted). "The *mandatory* nature of the regulation is the key, as a plaintiff 'must have a legitimate claim of entitlement to the interest, not simply a unilateral expectation of it.'" *Washington v. Starke*, 855 F.2d 346, 349 (6th Cir. 1988) (quoting *Bills v. Henderson*, 631 F.2d 1287, 1292 (6th Cir. 1980)) (emphasis in original).

---

discussed above—any liability based on those regulations. *See, e.g., Tony "L",* 71 F.3d at 1189 ("[N]either [the statute] *nor the relevant regulations* mandate a particular means of investigation or state what type of actions must be taken to protect abused or neglected children.") (emphasis added).

In other words, in determining whether state law creates a liberty interest protected by the due process clause, the initial inquiry is whether the state has used explicitly mandatory language in connection with requiring specific substantive predicates to place substantive limitations on official conduct. If the statute uses explicit mandatory language and provides substantive predicates, the second inquiry is whether the state has mandated a specific outcome if the substantive predicates are met. Procedural rights that do not require a particular substantive outcome are not liberty interests protected by the Fourteenth Amendment, even if the right is "mandatory."

Here, Plaintiff's procedural due process claim rests upon the Michigan Child Protection Law, Mich. Comp. Laws § 722.621 *et seq.*, as they have generally referred the Court without specifying any particular statutes that includes a substantive limitation on official discretion and requires a particular substantive outcome.[6] (*See* Pl.'s Resp. at 26 ("Child Protection Statutes, and the mandatory requirements set forth in the CPS Administrative Regulations which flesh out CPS investigators' legal requirements give rise to protectable liberty interests in the mandatory language of the legal mandates.").) Michigan's

> Child Protection Law, in relevant part, defines and requires the reporting of child abuse and neglect. Defendants are alleged to be agents or employees of [MDHS] ... charged with responsibility for investigating reports of suspected child abuse or neglect and for taking necessary action to prevent further abuses and to safeguard and enhance the welfare of the child.

---

[6] To the extent Plaintiff also relies on state administrative rules or regulations to establish a procedural due process violation, the Court rejects for the reasons given below regarding the Michigan Child Protection Law. Such rules and regulations do "not impose explicit and substantive limitations on defendants' discretionary authority ... It does not create a legitimate claim of entitlement that can be denied only upon observance of procedural due process." *Coker*, 813 F.Supp at 571.

12

*Coker*, 813 F.Supp at 569. Plaintiff's claim is premised on Defendants' alleged failure to protect her son from harm by failing to properly investigate a protective services referral. The applicable statute, however, does not mandate a particular outcome: it only mandates the commencement of an investigation into the referral within 24 hours, which was done here. There is no requirement under that the investigation result in the referral being substantiated or, if substantiated, that the child be removed from his home. In other words, despite the fact that an investigation might have been mandatory, the statute does not mandate the outcome of that investigation. *See Coker*, 813 F.Supp at 570 ("The Michigan Child Protection Law does not prescribe and mandate compliance with specific procedures substantively limiting the discretion of state officers. It is not sufficiently explicit and mandatory and does not create a legitimate claim of entitlement of the nature here claimed."). Because no specific outcome is mandated by state law with respect to such a referral or investigation, any procedural due process liberty interest claim that Plaintiff may be attempting to assert here fails as a matter of law. *See Tony "L"*, 71 F.3d at 1186 ("The claim of a state-created liberty interest fails, however, because no particular substantive outcome is mandated. The requirement that an investigation be initiated only gives plaintiffs an expectation of receiving a certain process. ... An expectation that some sort of action will be taken is not enough. Rather, a plaintiff must have an expectation that a particular result will follow from a particular, required action. This statute simply does not provide Plaintiffs with such an expectation.").

Even upon viewing the complaint in the light most favorable to Plaintiff, they can prove no set of facts in support of the claims that would entitle them to relief. Accordingly, Plaintiffs' procedural due process claims against all Defendants must be dismissed.

### C. Alternatively, Defendants are Entitled to Qualified Immunity

To determine whether Defendants are entitled to qualified immunity, this Court must determine whether the violation involved a clearly established constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." *Id.* at 202. In other words, existing law must have put Defendants on notice that their conduct would be clearly unlawful. *Id.*

Although the Court is granting summary judgment on other grounds, the Court finds that even assuming Plaintiff could plead a viable constitutional claim, Defendants are entitled to qualified immunity. Plaintiff has not met her burden to establish that a reasonable person in any of the Defendants' positions would have reasonably believed their conduct was unlawful based upon pre-existing law. Moreover, there is no clearly established right to protection from private harm where, like *DeShaney*, the state may have been aware of the dangers that Fossett "faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, 489 U.S. at 201.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: April 5, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 5, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager